IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                       CRIMINAL ACTION NO. 2:09-cr-00100

ODREY PAUL REED,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendant's Motion to Suppress Statement of Defendant [Docket 26]. On July 13, 2009, I held a hearing on this motion and heard testimony from the arresting officer, Deputy D.H. Duff. At that time I ordered the parties to file supplemental briefs on the question of whether the challenged statement should be suppressed. The briefs followed and the matter is now ripe for review.[1] For the reasons explained below, the motion is **DENIED**.

**I. Background**

Based on the testimony heard at the hearing and the documents and briefs submitted, I **FIND** that the facts of this case are as follows. On March 4, 2009, Deputy Duff was responding to a "shots fired" 911 call in the Legg Fork area of Sissonville, West Virginia that identified a light blue older model vehicle as being in the area of where the shots were fired. At approximately 7:26 a.m.,

---

[1] I note that a Superseding Indictment was filed on July 21, 2009 in this case, thus creating a new deadline for pretrial motions and pushing the trial date back. Nevertheless, it is appropriate for me to rule on this motion at this time as it remains crucial to the ultimate determination of the case.

Deputy Duff found a vehicle matching the description of the 911 call in a remote area. The defendant was the front seat passenger and Eric Counts was the driver. Mr. Counts told Deputy Duff that he did not have a driver's license or car registration and Deputy Duff then asked Mr. Counts to step out of the vehicle. Deputy Duff then performed a *Terry* frisk of Mr. Counts for officer safety and found drug paraphernalia on Mr. Counts' person. Deputy Duff eventually handcuffed Mr. Counts and put him into the back seat of his police vehicle.

While frisking and tending to Mr. Counts, Deputy Duff observed the defendant moving around in the front seat of the vehicle. Deputy Duff testified that it appeared the defendant was trying to get something out of his pockets. Deputy Duff asked the defendant to sit still and keep his hands out of his pockets, to which the defendant replied that he was just trying to eat food from his pockets. Soon thereafter, Deputy Duff ordered the defendant to stop moving for officer safety reasons. Deputy Duff further testified that while he placed Mr. Counts into his police vehicle, he observed the defendant leaning forward as if he were stuffing something under the front seat. Deputy Duff then walked back to the vehicle and ordered the defendant out of the vehicle. At that point, Deputy Duff handcuffed the defendant for officer safety as he was working alone in a remote area and was responding to a shots fired call. Deputy Duff frisked the defendant, finding two knives and a pill bottle containing several types of pills.

Thereafter, Deputy Duff searched the vehicle and found a loaded .32 caliber revolver under the front passenger seat. Deputy Duff then walked back to the defendant and stated something to the effect of "now I know why you were moving around in there." The defendant then asked "why?" and Deputy Duff responded "because I found the gun you were hiding under the seat." In response, the defendant stated that it was his deceased father's gun and that the defendant only used

it for coon hunting. Deputy Duff then arrested the defendant for being a convicted felon in possession of a firearm.

## II. Discussion

In *Miranda v. Arizona*, the United States Supreme Court held that *Miranda* warnings are required when a person is interrogated while in custody. 384 U.S. 436 (1966). If a person is "in custody" and being interrogated without having been read *Miranda* warnings, then statements made by that person may be suppressed by the court. In this case, the defendant seeks to suppress the statement that the firearm was his deceased father's and that the defendant only uses the firearm for coon hunting. The parties readily agree that for purposes of *Miranda*, the defendant was in custody when he made the statement. Accordingly, whether the statement should be suppressed turns on whether the statement was made in response to interrogation.

"'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Interrogation does not require express questioning by a police officer of a person in custody, however. Rather, "custodial interrogation" occurs when a person in custody is subject to the "functional equivalent" of interrogation. *Id.* at 301. The *Innis* Court held that "functional equivalent" includes "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* The *Innis* Court then concluded that two officers who were speculating in the defendant's presence about what may happen if a child found a sawed-off shotgun allegedly used in a murder, should not have known that their conversation would elicit an incriminating response. *Id.* at 302-03. "[T]he respondent was not subjected by the police to words

-3-

or actions that the police should have known were reasonably likely to elicit an incriminating response from him." *Id.* at 303. A corollary to this rule of law is that "[v]olunteered statements of any kind are not barred by the Fifth Amendment" and, therefore, are admissible under *Miranda*. *Id.* at 300.

The Fourth Circuit addressed a scenario similar to that at hand in *United States v. Payne*, 954 F.2d 199 (4th Cir. 1992). In *Payne*, a defendant being transported by three FBI agents overheard one of the agents have a phone conversation regarding the execution of a warrant at the defendant's house. *Id.* at 201. One of the agents then said to the defendant, "They found a gun at your house." *Id.* In response, the defendant said, "I just had it for my protection." *Id.* The Fourth Circuit held that the *Innis* definition of interrogation is not so broad as to capture within *Miranda's* reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges. *Id.* at 201-02. The Fourth Circuit went on to state that "substantial deference on the question of what constitutes interrogation must be paid to the trial courts, who can best evaluate the circumstances in which such statements are made and detect their coercive aspects." *Id.* at 203. The Fourth Circuit then affirmed the ruling of the district court denying the motion to suppress on the grounds that there was no evidence that the statement was "reasonably likely to elicit an incriminating response." *Id.* (citing *Innis*, 446 U.S. at 302).

Recently, in *United States v. Blake*, the Fourth Circuit addressed whether an officer's remark of "I bet you want to talk now, huh?" was the functional equivalent of interrogation under the *Innis* standard. ___ F.3d ___, Nos. 07-4619, 07-4827, 2009 WL 1912518 (4th Cir. July 2, 2009). Although the officer's remark in *Blake* occurred under different circumstances than the officer's statement in this case, the district court applied the same legal standard. In doing so, the district

court determined that the conduct "did not 'rise above subtle compulsion,' as it would have to do in order to constitute the functional equivalent of interrogation." *Blake*, 2009 WL 1912518, at \*5 (quoting the district court opinion). Rather it was determined to be "a snide taunt or a facetious jibe and it represented no more than a caustic commentary by [the officer] on the evidence." *Id.* (quoting the district court opinion). Furthermore, the court found it was "'only an isolated, offhand remark' that 'invited no reply' and noted that it 'was not a lengthy harangue in the presence of the suspect.'" *Id.* (quoting the district court opinion). The district court held that the officer could not have anticipated that the remark would be likely to elicit an incriminating response or provided "any level of coercion or compulsion." *Id.* (quoting the district court opinion).

The Fourth Circuit then affirmed the district court's denial of the defendant's motion to suppress. *Id.* at \*6-8. That court held that a reasonable officer in the same position "would not have anticipated that his taunt would elicit an incriminating response." *Id.* at \*6. Rather, the Fourth Circuit reasoned that if the officer had thought before speaking then "he very well might have predicted that it would anger Blake, thereby *reducing* the chance that he would confess." *Id.* (emphasis in original). The court held that the officer's remark had "relatively little potential to intimidate" the defendant and that it "was not the functional equivalent of interrogation." *Id.* at \*8.

In this case, I must determine whether Deputy Duff's statement that the defendant was moving around because he was hiding a gun was the functional equivalent of interrogation. First, I **FIND** that there was little potential to intimidate in this case as compared to a typical arrest. An officer is not required to remain totally silent when making an arrest and commenting that he now understood why the defendant was acting a certain way does not supply additional intimidation. The defendant argues that Deputy Duff should have known that his statement would be likely to evoke

an incriminating response from the defendant. I disagree. Rather, much like the officer's statement in *Blake*, I **FIND** that a reasonable officer would predict that making such an accusation would reduce the possibility that the defendant would confess. *See id.* at *6. The defendant knew of his status as a felon and knew that, as such, he could not legally possess a firearm. Accordingly, it does not follow that the officer would have anticipated that the defendant would admit to possessing the firearm in response to Deputy Duff's statement, rather than simply denying ownership or knowledge of the firearm or even remaining silent.

As the Fourth Circuit held, "the *Innis* definition of interrogation is not so broad as to capture within *Miranda's* reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." *Payne,* 954 F.2d at 201-02. I **FIND** that Deputy Duff's statement was an innocuous offhand remark similar to those addressed in *Payne* and *Blake*. Furthermore, as in *Blake*, Deputy Duff's statement did not seek a reply and did not rise to the level of "a lengthy harangue" or become the functional equivalent of interrogation. As such, I cannot find that the defendant's *Miranda* rights were violated and, therefore, the Motion to Suppress is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:	July 28, 2009

*[signature]*
Joseph R. Goodwin, Chief Judge